LAW OFFICE OF MICHAEL L. FRADIN
Michael L. Fradin, Esq.
8401 Crawford Ave. Ste. 104
Skokie, IL 60076
Telephone: 847-986-5889
Facsimile: 847-673-1228
Email: mike@fradinlaw.com

Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Ladonna Vernon<br><br>    Plaintiff,<br>v.<br><br>Walmart, Inc.<br>702 Southwest 8th Street<br>Bentonville, AR 72716-0215,<br><br>And<br><br>Walmart Supercenter #1596<br>200 S. Bolingbrook Drive<br>Bolingbrook, IL 60440,<br><br>    Defendants. | Case No. 20-cv-07024<br><br>**PLAINTIFF'S FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>Presiding Judge Franklin U. Valderrama<br>Magistrate Judge Jeffrey T. Gilbert |

## I.  INTRODUCTION

Now Comes Plaintiff, Ladonna Vernon ("Vernon"), by and through her Attorney, Michael L. Fradin, and brings this action against Defendants Walmart Supercenter #1596 ("Supercenter") and Walmart, Inc. ("Walmart"), collectively referred to hereinafter as Defendants, for violations of 42 U.S. Code § 1981 ("Section 1981") and Title II of the Civil Rights Act of 1964 ("Title II"). On or about December 11, 2018

Plaintiff Vernon suffered racial discrimination and was called a "n*****" by a Walmart employee at their 200 S. Bolingbrook Drive in Bolingbrook, IL 60440 location. Defendants denied, or effectively denied, service to Plaintiff Vernon on the basis of her race. Defendants banned Plaintiff from shopping at the store on the basis of her race. Defendants denied Plaintiff the right to make and enforce contracts that is enjoyed by white citizens of the United States, in violation of § 1981. Defendants also denied Plaintiff the full equal enjoyment of their goods, services, facilities, privileges, advantages, and accommodations on the basis of race, in violation of Title II. Plaintiff Vernon seeks monetary damages as well as a court order barring Defendants from engaging in future discriminatory conduct toward non-white customers.

## II.  PARTIES

### A. Plaintiff

1. Plaintiff Ladonna Vernon is an African-American female and a resident of the state of Illinois.

### B. Defendants

2. Defendant Walmart Supercenter #1596 is a retailer and shopping center located at 200 S Bolingbrook Drive in Bolingbrook, Illinois 60440.

3. Defendant Walmart, Inc. is headquartered at 702 SW 8th Street Bentonville, AR 72716, and maintains a retail outlet at 200 S. Bolingbroke Drive in Bolingbrook Illinois, 60440, as well as other retail locations in Illinois and throughout the country. Defendant Walmart, Inc. owns and operates over 3,000 store locations in the United States.

## III.  JURISDICTION AND VENUE

4. This action properly lies in this district pursuant to 28 U.S.C. §1391 because the events giving rise to this claim occurred in this judicial district.

## IV. FACTS

5. On or around December 11, 2018 Plaintiff Ladonna Vernon went shopping at the Walmart Supercenter located at 200 S. Bolingbrook Drive in Bolingbrook, Illinois 60440 (the Store).

6. Plaintiff Ladonna used the self-checkout to purchase her items. As is not uncommon with self-checkout machines, there was a problem during her attempt to checkout. Plaintiff Vernon requested assistance but continued to check out.

7. As Plaintiff Vernon walked toward the exit, Defendants' employee and/or agent (the security guard) approached Plaintiff and grabbed her shopping cart.

8. Plaintiff's race was a factor in the security guard's decision to stop Plaintiff.

9. After detaining Plaintiff, the security guard escorted Plaintiff back towards the store. While doing this, the security guard made a comment in which she used the racial epithet "n*****" to refer to Plaintiff Vernon, as well as other African-Americans and black people. (Plaintiff Vernon believes the security guard said, "these n*****s be stealing . . .")

10. The security's guard's use of the racial slur and her statement is demonstrative of Defendants' policy and practice of racially profiling African American shoppers as more likely than non-African American shoppers to steal.

11. Another customer, Rashay Baker, witnessed the security guard use the racial slur and was so disgusted by it that she exchanged her contact information with

Plaintiff Vernon and provided a voluntary statement confirming the Walmart Employee's use of the term, "n*****".

12. After detaining Plaintiff, the security guard indicated to her that she was not free to leave and escorted Plaintiff to the store's Asset Protection Office.

13. While detained at the Asset Protection Office, Plaintiff Vernon was not free to leave the Store. In the Asset Protection Office, Plaintiff was interrogated by Defendants' security staff in the presese of Defendants' Asset Protection Manager, the security officer who used the racial slur, and another woman who appeared to also work in security.

14. After being interrogated for approximately half of an hour, Plaintiff Vernon requested to step out of the Store because her 14-year-old autistic daughter was waiting in the car.

15. Defendants' employees and/or agents denied Plaintiff's request and indicated to Plaintiff that she was not free to leave.

16. Defendants' employees and/or agents detained Plaintiff Vernon in the Asset Protection Office for over two hours.

17. Defendants' employees and/or agents detained Plaintiff for this extensive period of time because of Plaintiff's race.

18. While Plaintiff was being detained, Defendants' employee and/or agent gave Plaintiff Vernon a yellow piece of paper labeled "TRESPASS WARNING" that indicated that she was banned from the Store.

19. Defendants' employee and/or agent also verbally told Plaintiff that she was banned from shopping at the Store.

20. If not for being banned from shopping at the Store, Plaintiff would shop at the Store.

21. Plaintiff was banned from shopping at the Store because of her race and because as a result of race based discrimination.

22. Defendants' employees attempted to take a photo of Plaintiff Vernon for their records so that Plaintiff would no longer be permitted to shop at the store.

23. Plaintiff was ultimately escorted out of the store by a police officer, causing Plaintiff additional humiliation.

24. Plaintiff Vernon's disabled daughter sat alone in a car that was not running for approximately two and a half hours that day, while Plaintiff was subjected to a racial discrimination by Defendants' store and security staff.

25. Despite being told that Plaintiff's daughter had special needs and was stranded in a car in the parking lot, Defendants' employees and/or agents refused to allow Plaintiff to contact her daughter and refused to assist in informing Plaintiff's daughter of the situation.

### V. LEGAL CLAIMS

**First Claim for Relief
Against All Defendants
Violations of 42 U.S. Code § 1981 – Equal rights under the law**

26. Plaintiff Vernon re-alleges all prior paragraphs of the Complaint as if set out here in full.

27. Section 1981 states,

(a) Statement of Equal Rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and Enforce Contracts" Defined

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c) Protection against Impairment

The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

28. Plaintiff Vernon was in contractual relations, or prospective contractual relations, with Defendants when she was racially discriminated against by Defendants' staff on December 11, 2018.

29. Defendants discriminated against Plaintiff Vernon by racially profiling her in Defendants' Walmart store location in the initial stop, the interrogation, and the ban.

30. Defendants discriminated against Plaintiff Vernon when a member of Defendants' staff used a racial slur to refer to Plaintiff and other African-American and/or black people.

31. Defendants discriminated against Plaintiff Vernon when members of Defendants' staff held Plaintiff Vernon in an office room for over two and a half hours

PLAINTIFF'S FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

while Plaintiff Vernon's disabled child sat alone in a car in the Defendant store's parking lot.

32. Defendants' discrimination against Plaintiff Vernon resulted in additional conditions and hardships that prevented Plaintiff Vernon from enjoying the same right to make and enforce contracts that is enjoyed by white citizens of the United States, in violation of Section 1981.

33. Plaintiff Vernon was deprived of services while similarly situated, non-African-Americans were not and/or Plaintiff Vernon received services in a markedly hostile manner and in a manner that a reasonable person would find objectively discriminatory (such as when a member of Defendants' staff called Plaintiff Vernon a highly offensive racial slur).

34. As a result of the foregoing, Plaintiff Vernon has suffered damages.

### Second Claim for Relief
### Against all Defendants
### Violations of Title II of the Civil Rights Act of 1964

35. Plaintiff Vernon re-alleges all prior paragraphs of the Complaint as if set out here in full.

36. The purpose of Title II is to "make it possible to remove the daily affront and humiliation involved in discriminatory denials of access to facilities ostensibly open to the general public." H.R. Rep. No. 88–914 (1963), reprinted in 1964 U.S.C.C.A.N. 2355, 2393–94.

37. Defendants' conduct described above has deprived Plaintiff, because of her race, to the rights secured by 42 U.S.C. § 2000a *et seq*. since, because of her race and the security guard's bigotry, Plaintiff has been denied access to the store.

PLAINTIFF'S FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

38. As a result of the foregoing, Plaintiff Vernon has suffered damages, such that punitive damages are appropriate.

## VI. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Vernon respectfully demands judgment against Defendants and asks the Court for the following relief:

(a) Damages in amounts to be established at trial, including, without limitation, damages for past, present, and future emotional pain and suffering and ongoing mental anguish;

(b) Other compensatory damages;

(c) Injunctive relief as this Court deems necessary and proper;

(d) A declaratory judgment that Defendants violated Plaintiff Vernon's Constitutional rights;

(e) Injunctive relief to be determined at trial requiring Defendants to comply with federal law under Section 1981 and Title II;

(f) Pre- and post-judgment interest;

(g) Costs;

(h) Punitive damages;

(i) Attorney's fees pursuant to all relevant statutes and law including, but not limited to, 42 U.S.C. § 1988(b); and

(j) Such other and further relief as the Court may deem just and proper.

DATED: June 16, 2021

Respectfully submitted,

s/ *Michael L. Fradin*

Attorney for Plaintiff

LAW OFFICE OF MICHAEL L. FRADIN
Michael L. Fradin, Esq.
8401 Crawford Ave. Ste. 104
Skokie, IL 60076
Telephone: 847-986-5889
Facsimile: 847-673-1228
Email: mike@fradinlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on June 16, 2021, a copy of foregoing *FIRST AMENDED COMPLAINT* was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

*s/Michael L. Fradin*
Michael L. Fradin, Attorney at Law